4  126
4  181
4  126
10  460
4  126
14  475
4  126
34s  234

MADERA, APPELLANT, v. HOLDREGE, APPELLEE.

1. EXEMPTION, WHEN NECESSARY TO BE CLAIMED.

When the only property owned by the defendant is clearly within the statutory exemption, a levy thereon is illegal; but where the exemptioner has other property subject to levy he must assert his rights by claiming the exemption.

2. WHEN CLAIM TO BE MADE.

Whenever it is necessary for the exemptioner to make a selection of the property levied upon which he desires to hold, it seems that it may be made at any time prior to sale.

3. RIGHT TO RETURN EXEMPT PROPERTY.

The right of a defendant to claim as exempt property levied upon, draws after it the right of the officer to return it on demand.

4. EXEMPTION, RIGHT ABSOLUTE.

When an officer is about to seize property exempt under the statute, the defendant may insist on his rights, and his neglect or refusal to point out other property will not authorize the officer to take that which is exempt.

5. PLEADING.

A complaint to recover a statutory penalty which states facts constituting a cause of action, need not refer to the statute.

*Appeal from the District Court of Boulder County.*

THIS suit was brought against an officer to recover treble damages for the seizure, under a writ of attachment, of property which the alleged debtor claimed was exempt from execution. The General Statutes of 1883, section 1868, provide " If any officer or other person, by virtue of any execution or other process, or by any right of distress, shall take or seize any of the articles of property hereinbefore exempted from levy and sale, such officer or person shall be liable to the party injured for three times the value of the property illegally taken or seized, to be recovered by action of trespass with costs of suit."

In February, 1892, I. T. McAllister commenced an action against Ell A. Holdrege before a justice in Boulder county to recover $53.05, and sued out a writ of attachment in aid of the suit. The process was put in the hands of Frank

Metcalf, a constable, in the ordinary way. The officer levied the writ on a stallion belonging to Holdrege and took him away. At the time of the levy neither the officer nor the defendant said anything concerning the claim or right of exemption; and the ordinary course pursued by officers in the service of process was taken by Metcalf. After the property was taken, the defendant served notice on the officer, claiming the animal as a work horse and exempt under the law. Within a short time, an attempt was made to release the levy and return the property. Metcalf seems to have had occasion to leave town, and delegated Madera, the defendant in the ultimate suit and the appellant here, to act for him in respect of this matter. Madera and McAllister, in response to the demand, took the horse down to Holdrege's place and attempted to redeliver him. They took it into the yard and tendered it to Holdrege who refused to take it. Thereupon the horse was tied to a wagon in the yard, and Madera told Holdrege that he brought him back at Metcalf's request in response to the demand. Madera was also a constable. After this attempted delivery, Madera demanded of Holdrege that he turn over to him other property which it was claimed he owned, to be taken in satisfaction of the writ and to answer for the debt—stating that in case the debtor failed to do this he would again levy a writ on the animal. Some doubt is left in the record as to precisely what Holdrege said concerning other property; but at all events he turned over none. Madera thereupon produced a second writ of attachment which had been issued in the same suit of McAllister against Holdrege, served a copy on the defendant, and took the horse. Afterwards Holdrege served a demand on Madera for the return of the animal, making the same claim asserted in the notice to Metcalf. The notice was served on the 3d of March. Madera did nothing in response to this notice for several days, and on the 8th of March the present suit was instituted. Judgment was entered in the original action of McAllister v. Holdrege on the 5th of March, and on the 7th an execution was issued for its enforcement.

Nothing was done under this execution so far as the proof shows, and at all events no sale of the property had occurred or other disposition been made of it when the present action was brought and at the time of the subsequent occurrences, which will be stated. Some time after the service of the notice on Madera, but at what precise date the abstract does not show, in response to the demand which had been served on him, Madera undertook to return the animal. He took him down to Holdrege's place and tried to enter the yard, and found the entrance barred. He saw Holdrege, however, at that time and told him what he had come for and offered him the horse. Concerning this matter there is no dispute, since Holdrege himself testifies that he absolutely refused to take it, and that Madera offered it to him, and would have turned it over had he not declined to receive it. At the time of this last transaction, another Richmond appeared in the field, armed with an authority which the exemption statute did not affect. It seems that on the 5th of December, 1891, Holdrege had made a chattel mortgage to the First National Bank of Boulder, which covered this and other property. The mortgage contained the usual conditions and matured, if there were no other breach, by the lapse of time, in May. Like all other instruments of this description, a levy of a writ of attachment on the property gave the holder the right to declare the whole sum due. The history of this mortgage and its transfers is not clearly stated in the abstract, nor did the jury find anything about it. It appears that prior to the seizure to be afterwards noted, McAllister bought the mortgage of the bank; but at some time intermediate its enforcement parted with the title, and possibly with all interest in it, to some other person, and that title became vested in J. H. Crary, who was one of McAllister's employees, and who testified that he was the owner. When Madera took the horse down to Holdrege's place and sought to deliver it under the demand, he was followed by another officer who held this mortgage, and when Holdrege refused to receive the animal, this representative

of the mortgagee took the property out of Madera's possession under the authority which the instrument contained, and the horse was subsequently sold thereunder.      Holdrege attempted to pursue his rights, and notified the parties concerned that the mortgage was not due, and that they were without the right to sell, contending that it was being used as an instrument by McAllister to enforce the payment of the debt by a claim of a breach of a condition created by his own act, to wit:—the issue of the writ of attachment.    The cause was submitted to the jury under sundry instructions, which stated generally what property was exempt, the terms of the statute, and the rule concerning the right of the mortgagor of chattels to claim an exemption.   The court also instructed the jury, " If you believe that at the time the writ of attachment was levied in this case, the defendant in this suit, which is the plaintiff here, had other working animals besides the one in question, you are instructed that it was his duty, within a reasonable time, to turn over such animals for the satisfaction of the debt, and he is not entitled to claim any exemption until he does so.

" If you find for the plaintiff, find for three times the value of the horse as shown by the evidence."

As usual, the evidence of value was conflicting, but the jury found a verdict against the officer for $375, for which judgment was entered with costs, and the case was appealed to this court.

Mr. R. H. Whiteley, for appellant.

Mr. J. R. Zuver and Mr. H. C. Henderson, for appellee.

Bissell, P. J., delivered the opinion of the court.

This judgment was evidently entered on a misconception of the privilege and the duty of the exemption claimant, of the authority and responsibilities of the officer under the writ, and of the proper construction of the exemption statute.   There

is considerable conflict in the cases concerning the duty of the claimant with respect to the assertion of his rights of exemption, and the powers of the officer with reference to the seizure of property. So far as those questions arise in this case, the particular principle involved has been settled by the supreme court, and we need not look farther for authority on which to declare the law. As a general proposition, it is established that the officer may enforce his writ against whatever property he finds in defendant's possession, whether he be serving a writ of attachment or a writ of execution, unless the only property which the defendant has subject to levy is within the protection of the exemption statute. The earlier case undoubtedly declared the law to be that the duty rested upon the defendant to claim the exemption if he desired to insist on it. The subsequent decision draws a distinction between the case where the only property owned by the defendant is clearly within the statutory limit, and a case where the defendant has other property subject to levy. The later decision holding that, in the first instance the levy is illegal, and in the latter that the defendant must assert his rights. *Behymer v. Cook*, 5 Colo. 395; *Harrington v. Smith et al.*, 14 Colo. 376.

These authorities do not state when the right of selection shall be exercised, nor when the claim shall be made; but since under some circumstances the claimant must make his selection, the rule adopted in those cases which impose the duty on the claimant is the only one which can be followed. In general, those authorities state that the selection may be made, and the notice concerning it may be given at any time prior to sale under the process by which it was taken. Of course the rule would be the same in attachment as after judgment—although in the former the right to exercise the privilege would probably continue until the final entry, and an attempt to sell under the execution. Thompson on Homesteads and Exemptions, § 839; Freeman on Executions, §§ 211 *et seq.*

In this case it is fairly deducible from the record that the

defendant had other property than the horse which was
seized.  Since this is true, it follows that the officer had a
right to take the property into his custody, and it thereupon
devolved on the claimant to assert his rights, and notify the
officer that this particular horse was selected by him as a
work-horse, and claimed as exempt under the statute.  This
the appellee did, and his notice was entirely regular, and it
became the duty of the officer on receipt of it within a rea-
sonable time thereafter to return the property to the custody
of the attachment defendant.  The importance of this state-
ment will be recognized when it is remembered that the offi-
cer holding the first writ (Metcalf) undertook to discharge
this duty, sent the horse back and tendered it to Holdrege,
who refused to receive it.  No right of action could have ac-
crued to Holdrege as against Metcalf under this state of facts,
for if the law cast upon him the duty to exercise the right of
selection, and likewise gave to the officer holding the writ
the right to seize the property, it necessarily follows that the
right of return must accrue to the officer upon the service of
the notice of the demand, and that this return if made or
tendered would relieve him from liability to treble damages
under the statute.  Thus far the case is plain, and seems to
have been accepted, since no action was brought against Met-
calf for an illegal seizure.  The case is nearly as plain under
the facts which surround Madera's connection with the trans-
action.  When the horse was returned and tendered to Hold-
rege, and  tied to the wagon for the purposes of surrender,
Metcalf's rights as officer under his writ were gone, and it
was incumbent upon  Holdrege to resume possession, and no
right of action had then accrued to him for trespass for the
taking.  At this point, Madera, who held the second writ,
was doubtless in error in the assertion of his powers thereun-
der, and the court was in error in its instruction on this sub-
ject.  When Madera left the property with the defendant,
under Metcalf's instructions, he undertook to compel Hold-
rege to turn out other property for the satisfaction of the
process which he held, and when this was not done, he as-

serted a right to retake the exempt animal into his possession. In this he was clearly wrong. There is no known principle of law under which an officer can force a person against whom he holds a process to aid him in discovering property, nor can he use his process as a club for the purposes of extracting the information. If it happens that at the time he attempts to make his levy, the property which he is about to seize is exempt under the statute, the defendant may insist on his rights, and his neglect or his refusal even to point out other property will not clothe the officer with the power to take that around which the statute has thrown its protecting arm. It may be that this principle is not absolutely universal, and that if the defendant had two horses and fraudulently concealed one to prevent the service of the writ on it, claiming the other as exempt—by which proceeding he would obtain the benefit of two horses in place of one—the law would uphold the officer in taking that which was in sight, though claimed to be exempt. This seems to be the ruling in the case of *Yates v. Gransbury*, 9 Colo. 323. But the present case furnishes no facts to which this rule can be applied. The court consequently erred when it stated the law to be that it was the duty of the defendant to turn over the other animals in satisfaction of the claim, and that he was without the right to insist upon the exemption until he had performed this duty.

Although this is true, no injury seems to have come to Holdrege by reason of the officer's conduct, nor did any cause of action come to him by reason of it. He refused to take the horse when Metcalf returned it, and although it was probably, in the contemplation of the law, in his possession when it entered the yard, and the officer transcended his rights when he retook it into his possession, the legal status of the parties was settled by their subsequent proceedings. After Madera took the horse away, Holdrege served a written demand on him for its return, claiming his statutory privilege. The case shows that after this demand, though at what precise date cannot be determined, Madera took the horse back to

Holdrege's place and attempted to redeliver it. He went to the yard, found the gate closed and asked Holdrege to open it that he might return the animal. Holdrege declined, and absolutely refused to receive it, and confesses on the stand in course of his testimony that Madera would have delivered the horse to him if he would have received it. Under these circumstances, it cannot be held that he had a cause of action against the officer for a trespass as for an illegal taking, unless the construction of the statute, which the court evidently adopted and on which counsel insists, is justified by its terms. We do not so conclude.

The phraseology of the act undoubtedly is that, "if any officer, etc., shall take or seize, etc., any of the articles, etc." On the argument it was seriously insisted by counsel that the right of action for treble damages under the act accrues immediately upon the taking or seizure of property, and if it is not returned under the exemptioner's demand before suit brought, the status of the parties is thereby settled and concluded. It was contended that they occupied precisely the same situation they would in the case of a seizure of the property of one by another, and a refusal to surrender on demand, which is always proof of conversion in the action of trover. But we think there must be in a case of this description something which is equivalent to a conversion of property by the officer to entitle the defendant to the enforcement of this penalty. To take and seize must be held to include in its legal significance the elements of conversion. No other construction would prevent the most manifest injustice. If the right of action for treble damages accrues immediately upon the seizure of exempt property under process, the defendant could recover from the officer at once three times its value, replevin what had been taken, pay his debt, have money and the goods left, and be likened unto the disciples on the banks of the Sea of Galilee, when they gathered up more than twelve basketsful of fragments beyond the amount of the original feast. If it be the law that the duty of selection must under some circumstances be discharged by the claimant, and

may be exercised at any time prior to the sale, this construction is impossible. This right to claim the exempt property draws after it a coequal right to be enjoyed by the officer to return it on demand. If the officer may lawfully seize under his writ, and the defendant may afterwards lawfully assert the exemption, it follows that the right of return must come to the officer after demand made.

The appellants attack the complaint because of the failure of the pleader to insert an allegation that the action was brought to recover the penalty specified in the statute. A good deal of stress was laid on the discussion of this proposition, and counsel seem to consider the pleading so fatally defective as to be subject to the criticism that it did not state facts sufficient to constitute a cause of action. It is not vulnerable to this objection. The pleader aptly and sufficiently stated all the facts constituting his cause of action—his title, his right under the statute, the levy of the process, his demand, the refusal to surrender, and all other facts essential to show his right to the possession of the property and the recovery of three times its value, and for this he prayed. These allegations were certainly a sufficient statement of a cause of action. Had they been adequately supported by the testimony, this would have enabled the plaintiff to succeed. His failure to prove a refusal to return the horse after demand, should the same result be reached on a subsequent trial, would doubtless defeat his recovery, and the absence of both averment and proof of conversion would then become of first importance if the court should be called on to pass on the matter of costs.

In the statement of facts preceding the opinion, we have recited a meager history of the mortgage under which a third party took the property from the custody of Madera after Holdrege's refusal to receive it, and under which it was subsequently sold and applied to the satisfaction of the mortgage debt. Under some circumstances, this proceeding might possibly operate as a defense to the officer when he was sued under the statute for the illegal taking. The matter is not

sufficiently developed in the present record to enable us to speak definitely concerning it. It was not pleaded by way of defense, nor was the truth about it sufficiently specific to entitle us to express a definite conclusion concerning the legal results flowing from its enforcement. Counsel have insisted that if the property were taken under the mortgage, then the officer could not be held liable, since the law would assume under the circumstances that the property was in Holdrege's possession when the mortgagee attempted to enforce it. It is insisted otherwise—that the mortgage really belonged to McAllister, the creditor, who was using his attachment suit as a means of declaring the mortgage due, that he might enforce it to the prejudice of the debtor. In the silence of the record, and in the absence of a sufficient issue to raise them, we are unable to pass on these questions. Probably the only possible importance of any proof. on this matter would be seen in some application which might be made to the court concerning the imposition of the costs in this suit. If, on the subsequent trial, the jury should find that the officer in good faith offered to return the property and Holdrege refused to receive it, then the law would attach to this proof the legal effect of a waiver of exemption rights, and the creditor would have the right to sell the property under subsequent judicial proceedings, or to take it and sell it under his mortgage security. The question would then remain whether this suit was so prematurely brought as to disentitle the plaintiff to recover his costs. The court will doubtless be able on the subsequent investigation to so determine these matters as to make a proper and equitable adjustment of the expenses incurred in this litigation. It has been referred to because insisted upon in argument, and since the case must go back for a farther trial, the court has deemed it wise to throw out these suggestions for the guidance of the court on the subsequent hearing.

The judgment is erroneous, and because of the errors committed by the trial court it must be reversed, and the case remanded for a new trial in conformity with this opinion.

*Reversed.*